## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

**PRIME INSURANCE SYNDICATE, INC.,**

     **Plaintiff,**

**v.**                                    **Case No.  8:05-cv-280-T-30EAJ**

**SOIL TECH DISTRIBUTORS, INC.,**

     **Defendant.**

_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Plaintiff, Prime Insurance Syndicate, Inc.'s, Motion for Summary Judgment (Dkt. #35-1), Affidavit of Mark Fisher (Dkt. #36-1), Affidavit of Peter Andersen (Dkt. #37-1), Defendant, Soil Tech Distributors, Inc.'s, Response in Opposition to Plaintiff's Motion for Summary Judgment and Its Cross-Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. #49), Affidavit of Luisa Mijares (Dkt. #51), Affidavit of William Scott Patterson (Dkt. #50), and Plaintiff, Prime Insurance Syndicate, Inc.'s, Reply Memorandum to Defendant, Soil Tech Distributors, Inc.'s, Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and Memorandum of Opposition to Soil Tech Distributors, Inc.'s Cross Motion for Summary Judgment (Dkts. #53, 54).  The Court, having considered the motions, responses, reply, memoranda, affidavits, and being otherwise advised in the premises, finds: (1) Plaintiff's Motion for Summary Judgment should be granted in part and denied in part; and (2) Defendant's Cross-Motion for Summary Judgment should be denied.

**Background**

On June 27, 2002, Prime Insurance Syndicate, Inc. ("Prime") issued a Commercial Business Auto Policy (the "Policy") to Soil Tech Distributors, Inc. ("STD"). The coverage contract period under the Policy was from June 27, 2002 through May 1, 2003, with a retro-active starting date of May 1, 2002. On or about January 7, 2002, Gonzalo Rodriguez ("Rodriguez") was added as an approved driver under the Policy with Prime.[1] On or about May 22, 2002, Abad Santana ("Santana") was added as an approved driver under the Policy with Prime.[2] On or about June 5, 2002, while operating a vehicle in the vicinity of STD's property, Gonzalo Rodriguez collided with another parked vehicle located nearby. Abad Santana owned the parked vehicle, a 1993 Freightliner truck. As a result of this collision, Santana brought suit against Rodriguez and STD in case styled *Abad Santana v. Gonzalo Rodriguez, and Soil Tech Distributors, Inc. d/b/a Bulk Express Transport, Inc.*, Case No. 03-2742, Division K, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "Santana lawsuit"). According to the allegations of the Santana lawsuit, Santana's vehicle sustained property damage in the amount of $17,150.07 and Santana sustained loss of income damages in the amount of $41,000.00.[3]

This action arises out of an Amended Complaint (Dkt. #15) for declaratory relief filed by Prime seeking a judicial declaration that it has no defense or indemnity obligations under

---

[1] *See* Dkt. #35-2.

[2] *See* Dkt. #35-2.

[3] *See* Dkt. #50.

the subject contract of insurance issued to STD as to claims asserted against STD in the Santana lawsuit.   Plaintiff also seeks a reimbursement of attorney's fees incurred in defending STD for the alleged non-covered event.

### Summary Judgment Standard

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).   At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, the court views all evidence in the light most favorable to the party opposing the motion. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996).   The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.   If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

## Duty to Defend and Indemnify Under Florida Law

Under Florida law, a court may issue a declaratory judgment as to an insurer's duty to defend and duty to indemnify.[4] *Higgins v. State Farm Fire & Casualty Co.*, 894 So.2d 5, 9 (Fla. 2004).   Florida courts have held that an insurer's duty to defend arises when a complaint filed against an insured alleges facts within the scope of the policy's coverage. *Trizec Properties, Inc. v. Biltmore Construction Co., Inc.*, 767 F.2d 810, 811 (11th Cir. 1985). Doubts as to whether a duty to defend exists are resolved in favor of the insured, and exclusionary clauses in insurance contracts are to be construed liberally in favor of the insured.   *Id.* at 12.   However, the duty to defend ceases when it is shown that there is no potential coverage. *Underwriters At Lloyds London v. STD Enterprises, Inc.*, 395 F.Supp.2d 1142, 1146 (M.D. Fla. 2005).

Under Florida law, an insurer's duty to indemnify is determined by analyzing the policy coverages in light of the actual facts of the underlying case.   *Id.* at 1147; *see also State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n. 3 (Fla. 1998).

## Plaintiff's Motion for Summary Judgment

Prime moves for summary judgment based on two separate bases: (1) the Cross Liability Exclusion contained in Endorsement PSI94-6; and (2) the Self Insured Retention obligation located in Endorsement PSI94-56A.

---

[4] Since this Court has jurisdiction over this matter based on diversity jurisdiction, the court applies the substantive law of Florida. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

The Policy at issue includes a Cross Liability Exclusion contained in Endorsement PSI94-6.  The cross liability exclusion excludes coverage for claims or suits brought by one insured against another insured in the policy.[5]  The Cross Liability Exclusion Endorsement PSI94-6 states:

> This Enclosure changes the Policy.  Please read it carefully.
> This insurance does not apply to liability arising from claims or suits brought by:
> 1.      One insured against another insured; or
> 2.      Any parent company or corporation of any insured member, or any subsidiary company, or corporation or any insured member; or
> 3.      Any other company or corporation owned by any of the entities described in 1 or 2 above; or
> 4.      Any division or department of any of the entities described in 1, 2 or 3 above; or
> 5.      Any officer, director or employee of any of the entities described in 1, 2, 3, or 4 above.[6]

Under Section II entitled "Who Is An Insured", the Policy states:

> The Following are Insureds:
> A.      You [STD] for business use of any covered AUTO;
> B.      Any other person who is an approved driver identified on the Scheduled Driver Endorsement for any business use of a covered AUTO.

The Policy also provides for a ten thousand dollar self insured retention payment per claim.  Paragraph 11 of the Self Insured Retention ("SIR") Endorsement states: "This policy shall not apply to any claim first reported to the Insurer while the Insured is in default in the

---

[5] It is undisputed that: Abad Santana and Gonzalo Rodriguez were both approved drivers identified on the Scheduled Driver Endorsement at the time of the vehicular accident at issue, and Rodriguez collided with Santana's vehicle while engaged in a business use of the vehicle.  Thus, STD, Santana, and Rodriguez are all "insured(s)" as contemplated by the Policy.

[6] Dkt. #35-2.

payment of the SIR under paragraphs 6, 7, or 9 of this Endorsement."[7]   Thus, Prime also argues that since STD is in default in the payment of SIR, and thus in breach of the Policy provisions, Prime should not have the burden of indemnifying or defending STD .

## STD's Cross-Motion for Summary Judgment

STD moves for summary judgment in its favor on the following bases: (1) Prime is collaterally estopped from denying that the Cross Liability Exclusion and the SIR Provision are void as a matter of public policy; (2) the Court lacks subject matter jurisdiction as the amount in controversy is less than the Court's jurisdictional limit; (3) Prime is precluded from denying coverage as a result of Prime's failure to fulfill the requirements of Fla. Stat. §627.426(2); and (4) Prime's claim for reimbursement of attorney's fees in defending the alleged non-covered action fails as a matter of law.

## Discussion.

## I.      STD's Public Policy Argument.

STD argues that the cross-liability exclusion should be voided as a matter of public policy and then cites several cases providing general rulings by federal courts relating to collateral estoppel.  None of the cases cited by Defendant even mention a cross employee liability exclusion.  Further, the Court is unaware of case law supporting STD's argument that a cross liability exclusion should be summarily voided as a matter of public policy. Accordingly, summary judgment based on this argument is denied.

---

[7] Dkt. #35-2.

II.     **STD's Lack of Jurisdiction Argument.**

STD argues that the amounts in controversy alleged in Prime's Complaint do not exceed $75,000.00, and therefore, Prime's Complaint should be dismissed for lack of diversity jurisdiction.

Diversity jurisdiction exists only "where the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs." 28 U.S.C. §1332(a). In general, the amount in controversy for jurisdictional purposes is determined by the amount of damages or the value of the property that is the subject of the action. *Hunt v. Washington State Apple Advertising Comm'n*, 432 US 333, 347-348 (1977). Specifically, in an action for declaratory relief, the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented." *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002), citing *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983); *see also Davis Tune, Inc. v. Precision Franchising, LLC*, No. 3:05CV97/RV, 2005 WL 1204618 (N.D. Fla. May 20, 2005) (Actions seeking declaratory and/or injunctive relief can complicate the calculation of the amount in controversy under Section 1332. In general, the value of such relief is determined by "the value of the object of the litigation," as judged from the plaintiff's point of view.); *Cohen v. Office Depot*, 204 F.3d 1069, 1077 (11th Cir. 2000) (the value of requested injunctive relief is the amount the plaintiff would recover or avoid losing if the injunction was granted.) Similarly, the "value of the right to be protected" is the "plaintiff's potential liability under the policy," plus potential attorneys' fees, penalties,

statutory damages and punitive damages.  *Hartford Insurance*, 293 F.3d 908, 912, citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250 (5th Cir. 1998).

In the underlying state court proceedings, Santana seeks property damages in the amount of $17,150.07 and loss of income damages in the amount of $41,600.00 for a total amount of $58,750.07.  However, the Court must consider Prime's potential liability under the Policy if Prime was indeed required to indemnify and defend STD and Rodriguez in the Santana lawsuit.  Accordingly, the Court must consider the attorney's fees and costs that might be incurred by Prime in the event this Court finds that STD and Rodriguez are in fact covered by the Policy.  The Court concludes that Prime could reasonably incur attorney's fees and costs exceeding $16,250.00 defending STD and Rodriguez in the underlying state court proceedings, in the event this Court was to find that Prime had a duty to indemnify and defend STD and Rodriguez in the Santana lawsuit.  Thus, Prime's potential liability under the Policy exceeds $75,000.00, and therefore, this Court possesses jurisdiction over this matter.  Accordingly, summary judgment based on this argument is denied.

## III.    STD's Argument that Prime has failed to fulfill the requirements of Fla. Stat. 627.426.

STD argues that Prime is collaterally estopped from denying coverage under the Policy as a result of Prime's failure to: (A) send written notice of a reservation of rights within 30 days of notification by STD of the Santana lawsuit as required under Fla. Stat. §627.426(2)(a), and (B) retain mutually agreeable counsel for STD as required under Fla. Stat. §627.426(2)(b).  Section 627.426(2)(b) states, in pertinent part:

(2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:

(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and

(b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:

1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;

2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or

3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

The following chronology of events appears to be undisputed by the parties: on November 23, 2004, STD sent a copy of the summons and complaint in connection to the Santana lawsuit to Prime; on January 22, 2005, STD's counsel received a phone call from Grant Nagamatsu, a representative of Prime, who advised that Prime would defend STD in the Santana lawsuit; on February 2, 2005, Prime's counsel advised STD by written correspondence that it would defend STD and suggested Gregg Elliot for representation; on March 25, 2005, STD notified Prime that it would not agree to representation by Greg Elliot and requested "mutually agreeable" defense counsel; Prime retained Greg Elliot to represent STD and did not assign other counsel; at no time did Prime give written notice to STD of its refusal to defend STD in the Santana lawsuit; at no time did Prime either request or obtain a nonwaiver agreement from STD with respect to the defense of the Santana lawsuit; and at

no time did STD agree to representation by Greg Elliot as defense counsel in the Santana lawsuit.

### A.     Notice Under Fla. Stat. 627.426(2).

In *Auto Owners Ins. Co. v. Salvia*, 472 So.2d 486 (Fla. 5th DCA 1985), the Fifth District Court of Appeal of Florida held that an insurance company was estopped to deny coverage to insureds because the notice of refusal to defend was sent by regular mail, rather than by registered or certified mail.  The Fifth District Court reasoned that strict compliance with Fla. Stat. §627.426 was required.

STD argues that the Fifth District Court's decision should be controlling in this matter.  However, the Second District Court of Appeal of Florida has specifically disagreed with the Fifth District Court's holding in *Auto Owners*.  *See Phoenix Insurance Company v. McCormick,* 542 So.2d 1030, 1031-1032 (Fla. 2d DCA 1989) (disagreeing with the Fifth District Court's finding that strict compliance with Fla. Stat. §627.426 is required).  Notably, STD conducts business in Hillsborough County, and both Santana and Rodriguez reside in Hillsborough County.  Additionally, the Santana lawsuit is pending in the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida.  Since Hillsborough County residents and courts are subject to the appellate jurisdiction of the Second District Court of Appeal, it is appropriate for this Court to apply the substantive law of the Second District Court in its consideration of this matter.

Consistent with the Second District Court's holding in *Phoenix*, two federal district courts have also rejected the requirement of strict compliance, as held in *Auto Owners,* when

insureds have received actual notice on a timely basis. *See Pepper's Steel & Alloys, Inc. v. U.S. Fidelity & Guaranty Co.*, 668 F.Supp. 1541 (S.D. Fla. 1987); *see also Lazzara Oil Co. v. Columbia Cas. Co.*, 683 F.Supp. 777 (M.D. Fla. 1988).   In *Pepper's Steel*, the Southern District Court held that where a plaintiff concedes actual notice within the meaning of the statute, although not in strict compliance with it, notice has been sufficiently effectuated. *Pepper's Steel*, 668 F.Supp. at 1544.   While an insured could easily be prejudiced by an insurance carrier's delay in determining its duty of defense, no prejudice results from a notice actually delivered by one method rather than another.   *Phoenix*, 542 So. 2d 1030, 1032.   The statutory language concerning notice by certified mail, or registered mail eliminates problems in proving that the insured received actual notice. *See id.*   However, when the insured admits actual notice, as here, strict compliance is not required. *See id.*

In the instant case, STD admits that it received notice by telephone of Prime's intent to defend STD in the Santana lawsuit, as well as, Prime's intent to retain Greg Elliot on STD's behalf.   Such "actual" notice was provided on January 22, 2005, when STD's counsel received a phone call from Grant Nagamatsu, a representative of Prime, who advised that Prime would defend STD in the Santana lawsuit.   It is undisputed that the summons and complaint were mailed to Prime on November 23, 2004.   Thus, actual notice of Prime's intent to defend STD was provided within the statutory 60 day period.   Accordingly, summary judgment based on this argument is denied.

**B.      Mutually Agreeable Counsel.**

STD also argues that Prime is collaterally estopped from denying coverage under the

Policy as a result of Prime's failure to retain mutually agreeable counsel for STD as required

under Fla. Stat. §627.426(2)(b)(3).  Section 627.426(2)(b)(3) states, in pertinent part:

(2) A liability insurer shall not be permitted to deny coverage based on a particular coverage
defense unless:

\* \* \*

(b) Within 60 days of compliance with paragraph (a) or receipt of a summons and
complaint naming the insured as a defendant, whichever is later, but in no case later than 30
days before trial, the insurer:

\* \* \*

3.      Retains independent counsel which is mutually agreeable to the parties.
Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement
is reached, shall be set by the court.

Pursuant to the affidavit of Luisa Mijares filed in support of STD's response in

opposition to Prime's Motion for Summary Judgment, STD did not agree to Mr. Elliot's

representation in the Santana lawsuit.[8]  Additionally, pursuant to a letter dated March 25,

2005, STD's legal counsel expressed STD's position that STD did not agree that Mr. Elliot

was mutually agreeable counsel for purposes of the Florida Claims Administration Statute.

However, STD has failed to argue or otherwise show any harm or prejudice that STD has

experienced as a result of Prime's alleged failure to appoint "mutually agreeable" counsel.

Other than simply declaring that Mr. Elliot is not agreeable to STD, STD has offered no

compelling reasons as to why Mr. Elliot was improperly retained by Prime.  STD admits that

_____

[8] *See* Dkt.#51.

they are not aware of any conflict of interest with Mr. Elliot.[9]  Further, it appears that STD has allowed Mr. Elliot to continue to represent them in the Santana lawsuit and has not shown prejudice or harm as a result of Mr. Elliot's representation.

While there may be a dispute of fact between the parties as to whether Prime's choice to retain Mr. Elliot was mutually agreeable to STD, such dispute does not appear to make much difference under the reasoning in *Phoenix*, since STD has not suffered prejudice or harm as a result of Prime's choice to retain Mr. Elliot on behalf of STD.  In *arguendo*, even if the reasoning in *Phoenix* was not controlling, it is not necessary for this Court to reach a determination of this issue, because there is no coverage under the Policy for the claims asserted in the Santana lawsuit.  STD cannot create coverage based on a violation of §627.426, where none otherwise exists.  Accordingly, Prime is not required to comply with the requirements of §627.426, since no coverage exists under the Policy as explained below.

## IV.    Application of Fla. Stat. §627.426 to Exclusions of Liability.

Prime moves for summary judgment based on the Cross Liability Exclusion contained in Endorsement PSI94-6 of the Policy.  Prime argues that since STD, Rodriguez, and Santana are all insured under the Policy, pursuant to the cross liability exclusion, Prime is justified in denying coverage for the claims brought against STD and Rodriguez by Santana in the Santana lawsuit.  While STD attempts to argue that Prime's failure to fulfill the requirements set forth in Fla. Stat. 627.426 prevents Prime from denying coverage under the Cross

---

[9] Dkt. #50.

Liability Exclusion contained in Endorsement PSI94-6 incorporated within the Policy, STD's argument is unsupported by Florida law.

The Supreme Court of Florida has considered this very issue in *AIU Insurance Company v. Block Marina Investment, Inc.*, 544 So. 2d 998 (Fla. 1989).  In *AIU Insurance*, the Florida Supreme Court considered whether an insurer is prohibited from denying coverage in connection with a loss, coverage for which was excluded under a comprehensive liability policy, due to its noncompliance with the notice requirements of section 627.426(2), Florida Statutes.  *See id.*  In *AIU Insurance*, the insured obtained a comprehensive general liability policy from AIU which contained an exclusion of coverage for damage to property in the care, custody, or control of the insured.  AIU informed the insured that although the claim was not one generally covered under the policy, it would provide a defense subject to a reservation of its right to assert a coverage defense under section 627.426(2)(a).  However, two weeks prior to trial, AIU refused further defense, notifying the insured that the claim was not covered under the policy.  Thereafter, the trial court granted summary judgment in favor of the insured finding that AIU was prohibited from denying coverage, because AIU failed to notify the insured of its refusal to defend within sixty days after its reservation letter and within thirty days before trial, as required by section 627.426(2)(b).  *See id.*

On appeal, AIU relied on the Fifth District Court of Appeal of Florida's decision in *United States Fidelity and Guarantee Co. v. American Fire and Indemnity Co.*, 511 So. 2d 624, 625 (Fla. 5th DCA 1987), in which the Fifth District held:

> The legislature did not intend, by section 627.426(2), to create coverage under a liability insurance policy that never provided that coverage, or to resurrect a policy that has expired by its own terms and no longer legally exists, to cover an accident or event occurring after its termination.[10]

In *AIU Insurance*, the Florida Supreme Court determined that the comprehensive general liability insurance policy in force explicitly excluded bailment losses from coverage. The Florida Supreme Court noted that the effect of the trial court's decision was to give coverage to the insured for bailment losses at a time when the insured's legal liability endorsement had been eliminated from the policy and the contract of insurance expressly excluded such losses from coverage. *See AIU Insurance* at 999. In consideration of the outcome of the lower courts decisions in finding coverage when such coverage never existed, the Florida Supreme Court disagreed and stated:

> We do not believe that the legislature intended, by the enactment of section 627.426(2), to give an insured coverage which is expressly excluded from the policy or to resurrect coverage under a policy or an endorsement which is no longer in effect, simply because an insurer fails to comply with the terms of the aforementioned statute.[11]

Likewise, the Fourth District Court of Appeal of Florida reached the same conclusion, holding that section 627.426(2) was not intended to create coverage where a claim is made outside the effective date of the policy or where a particular loss is expressly excluded from coverage. *See Country Manors Ass'n. v. Master Antenna Systems, Inc.*, 534 So.2d 1187 (Fla. 4th DCA 1988). In *Country Manors*, the Fourth District recognized that there is a lack of

---

[10] *U.S. Fidelity*, 511 So.2d 624, 625.

[11] *AIU Insurance*, 544 So.2d 998, 999.

coverage in either case and that "[a]n insurer does not assert a 'coverage defense' where there was no coverage in the first place." *Id*. at 1195. *See also National Union Fire Insurance Company of Pittsburgh, Pa. v. Goldman*, 548 So.2d 790, 791 (Fla. 2d DCA 1989) (holding that insurer's non-compliance with claims administration statute did not preclude insurer from raising defense that alleged acts of directors and officers were not covered by the policy, where the insureds are seeking coverage for a potential loss that is expressly excluded by the policy terms).

Based on such reasoning, the Florida Supreme Court in *AIU Insurance* concluded:

> Section 627.426(2), by its express terms, applies only to a denial of coverage "based on a particular coverage defense," and in effect works an estoppel. This Court recently reiterated the general rule that, while the doctrine of estoppel may be used to prevent a forfeiture of insurance coverage, the doctrine may not be used to create or extend coverage. *Crown Life Ins., Co., v. McBride*, 517 So.2d 660 (Fla. 1987) [footnote excluded]. We do not believe that it was the legislature's intent that section 627.426(2) change this long-standing rule. Further, construing the term "coverage defense" to include a disclaimer of liability based on an express coverage exclusion has the effect of rewriting an insurance policy when section 627.426(2) is not complied with, thus placing upon the insurer a financial burden which it specifically declined to accept. Such a construction presents grave constitutional questions, the impairment of contracts [footnote excluded] and the taking of property without due process of law. Therefore, we hold that the term "coverage defense," as used in section 627.426(2), means a defense to coverage that otherwise exists. We do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained. Under this construction, for example, if the insurer fails to comply with the requirements of the statute, it may not declare a forfeiture of coverage which otherwise exists based on a breach of a condition of the policy. However, its failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage sought is

expressly excluded or otherwise unavailable under the policy or under existing law.[12]

Consistent with the Supreme Court of Florida's holding in *AIU Insurance*, this Court concludes that Prime's failure to fulfill the requirements set forth in Fla. Stat. 627.426 does not bar Prime from disclaiming liability where the coverage sought is expressly excluded under the policy.  The Cross Liability Exclusion contained in Endorsement PSI94-6 of the Policy eliminates any possibility of coverage by Prime for STD and Rodriguez with respect to the Santana lawsuit.  Prime therefore has no duty to indemnify and its duty to defend is relieved.  Accordingly, summary judgment is granted in favor of Plaintiff as to Counts I and II of Plaintiff's Amended Complaint.

**V.      Prime's Request for Reimbursement of Defense Costs**.

In Counts I and II of Plaintiff's Amended Complaint (Dkt. #15), Plaintiff alleges that it is entitled to be reimbursed for attorney's fees incurred in defending the non-covered action.  Plaintiff does not allege a basis for such reimbursement.  Further, STD argues that the parties did not enter into a non-waiver agreement, nor did Prime reserve its right to seek a reimbursement of fees incurred in defending the Santana lawsuit.

Under Florida law, an insurer is not entitled to reimbursement of attorney's fees and costs due to defending an action unless the defense "was initially provided under an expressed reservation of rights providing for attorney's fees and costs if the insurer prevailed."  *Underwriters At Lloyds London v. STD Enterprises, Inc.*, 395 F.Supp. 2d 1142

---

[12] *AIU Insurance,* 544 So. 2d 998, 1000.

(M.D. Fla. 2005), citing *Wendy's of N.E. Florida, Inc. v. Vandergriff*, 865 So.2d 520, 522 (Fla. 1st DCA 2003).

In this case, Prime undertook the defense of STD in state court without asserting any reservation of rights.  Further, in Prime's response to STD's Cross-Motion for Summary Judgment, Prime did not show any reason why the court's ruling in *Wendy's of N.E. Florida* is not controlling.  Therefore, under Florida law, Prime has no legal basis for reimbursement of attorney's fees and costs expended in defending STD and Rodriguez in the Santana lawsuit.

## VI.   Conclusion.

The parties filed cross-motions for summary judgment seeking a declaratory judgment as to Prime's duty to defend and duty to indemnify STD in the Santana lawsuit.  Prime's duty to defend was triggered by the allegations contained within the Santana lawsuit.  However that duty is relieved when the underlying facts show that there is no possibility for coverage under the Policy.  It is undisputed that STD, Santana and Rodriguez were insured under the Policy.  The Cross Liability Exclusion in Endorsement PSI94-6 excludes coverage for claims or suits brought by one insured against another insured covered by the Policy.  Thus, the cross liability exclusion applies and there is no possibility of coverage for STD or Rodriguez with respect to the Santana lawsuit.  Therefore, Prime has no duty to indemnify STD or Rodriguez, and its duty to defend is relieved.  However, since Prime undertook the defense of STD and Rodriguez in the Santana lawsuit without a reservation of rights, Prime is not

entitled to recover a reimbursement of its attorney's fees and costs incurred in defending the non-covered action.

It is therefore ORDERED AND ADJUDGED that:

1.    Plaintiff, Prime Insurance Syndicate, Inc.'s, Motion for Summary Judgment (Dkt. #35-1) is GRANTED IN PART AND DENIED IN PART as stated herein.  The Court finds that Prime Insurance Syndicate, Inc. does not have a duty to defend or indemnify Defendants, Soil Tech Distributors, Inc. d/b/a Bulk Express Transport, Inc., Abad Santana, and Gonzalo Rodriguez in the action styled *Abad Santana v. Gonzalo Rodriguez, and Soil Tech Distributors, Inc., d/b/a Bulk Express Transport, Inc.*, case no. 03-2742, filed in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

2.    Soil Tech Distributors, Inc.'s Cross Motion for Summary Judgment (Dkt. #49) is DENIED.

3.    Plaintiff's request for reimbursement of attorney's fees and costs incurred in defending the non-covered action is DENIED.

4.    The Clerk is directed to enter JUDGMENT in favor of Plaintiff, Prime Insurance Syndicate, Inc., and against Defendants, Soil Tech Distributors, Inc., Abad L. Santana, and Gonzalo Rodriguez.

5.    The Clerk is also directed to CLOSE this case and terminate all pending motions.

6.     Each party shall bear its own attorney's fees and costs incurred in this action.

**DONE** and **ORDERED** in Tampa, Florida on June 30, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-280.dual msj.wpd